## STATE V. TURNER.

1. **EQUITY:** *Relief against fraudulent settlement of collector.*

   When frauds, errors and improper credits are discovered in a collector's settlement after the County Court by the lapse of two years, has lost its power over the record of such settlement, relief may be had in chancery.

2. **SAME:** *Same: Parties defendant.*

   The sureties on a collector's bond may be made parties to a bill to have the record of his settlement corrected; and a decree may be rendered against them, on a recovery against him. But the sureties on six different bonds given for successive terms, cannot be joined as defendants unless each defendant has an interest in some matter common to all the parties.

3. **SAME:** *Same: Sufficiency of complaint.*

   Where a bill to correct the settlement of a collector charges that he obtained false credits and failed to charge himself with large sums of money, but does not point out specifically the credits complained of, nor charge distinctly that he collected and withheld any certain sums of money, it is not error on general demurrer to dismiss it without prejudice.

APPEAL from *Phillips* Circuit Court in Chancery.

M. T. SANDERS, Judge.

*Dan W. Jones*, Attorney General, for appellant.

1. The remedy in this case is clearly in equity.

When the frauds were discovered in the settlements the County Court could not open and restate the accounts. *30 Ark., 603; Mansf. Dig., sec. 5851; Gantt's Dig., sec. 5280.* The sureties could not be sued *at law* until a judicial ascertainment of the amount due from the principal. *22 Ark., 236; 35 id., 565; 42 id., 392.*

One of the recognized powers of equity is to open and restate accounts, or settlements obtained by fraud (*33 Ark., 729; 30 id., 66; 40 id., 393*); and especially when the maker

State v. Turner.

of such settlements is a trustee.　See *secs. 5874* to *5878 Mansf. Dig.*

2.　Equity has jurisdiction on account of the complication of the accounts; a court of law being incompetent to properly marshal the liabilities.　*Bisp. Eq., sec. 484; Story Eq. Jur., secs. 451–2.*

See, also, *8 Ark., 58; 4 Cowen, 727; 2 Caine's Cases, 51.*

The complaint is not multifarious.　*5 Hunn., 242; 7 Ga., 549; 32 Ga., 63; 4 Munf., 289; 2 How., 642.*　But if it were, that is no ground of demurrer.　*42 Ark., 193.*

See *33 Ark., 730,* and *State v. Churchill, 48 Ark.*

*Tappan & Hornor* for appellees.

The complaint is multifarious.,　There is no priority between the different sets of sureties, and their rights and liabilities are separate and distinct.　*7 Howard, 688.*

This case is distinguishable from *State v. Churchill.*　The collector is required to keep no accounts with the State or county; his accounts are kept by the County Clerk and he settles with the County Court by them.　His sureties are liable only for any amount found due on settlement, or on a failure to settle.　*Mansf. Dig., secs. 5752, 5760, 5813, 5816.*

The complaint does not charge any specific amounts that had been collected and retained.

The bill is nothing but a bill of discovery, which is not permitted by our statutes.　*Mansf. Dig., sec. 4921.*

The collector settles with the County Court, and is put on record.　*Mansf. Dig., secs. 5832, 5840.*　There is a plain, adequate remedy at law, and equity will not give relief.　*105 U. S., 107.*

State v. Turner.

SMITH, J. This bill in equity was filed by the State in its own behalf and for use of Phillips county, against Bart Y. Turner, late collector of said·county, and the sureties on his six several bonds as such collector for the years 1878, 1879, 1880, 1881, 1882 and 1883. It charges that Turner was elected Sheriff in 1878, re-elected in 1880, and again in 1882; that, by virtue of his office, he was collector of revenue in and for said county; and that he qualified by giving bond and acted as collector for each of the six years mentioned. The sureties on each bond are joined as defendants and the conditions of the bonds are set forth. It is then averred that in his settlements with the County Court for the current revenue of these successive years, he erroneously received credit for various large sums of money, which are specified, by reporting taxes on the poll and on personal and real property as delinquent when in fact the same had been paid; that these several sums were never charged back to the collector, nor has he accounted for the same; that the tax books for each of these years show large discrepancies between the amounts marked paid thereon and the amount reported by the collector to the County Court as collected; that he also collected large sums for liquor licenses and other taxes on privileges and from the sale of school lands, for which he failed to account, but the amount of the defalcation is not stated; that during his term of office he, at long intervals and at irregular periods, paid in large amounts, but these payments were made at such times and in such a manner as to make it impossible to tell, without taking an account, the sums that are due the State, county and school districts respectively, and from what set of bondsmen; that large liabilities incurred by the improper use of public funds were liquidated, in whole or in part, with money collected during a subsequent term of office; that many of the facts are known to Turner alone; that by reason of the negligence of the County Clerk, in keeping his books and records, and the false and fraudulent

reports, accounts and settlements of Turner, great confusion exists as to the extent of his indebtedness and to what term it is properly chargeable; that Turner is himself insolvent; and that the County Court is by law prohibited from opening and restating his accounts; and the prayer is for an accounting and a reference to a master, to the end that the liability of each set of sureties may be ascertained and fixed; and that Turner be required to furnish a correct account of all revenues by him collected and wrongfully withheld or fraudulently reported as delinquent.

This bill was dismissed on general demurrer, without prejudice to the plaintiff's right to bring a future suit.

The first question is: What has a court of equity to do with a suit of this nature? There is no privity between the sureties of the different bonds. The liabilities of the several sets of obligors are separate and distinct. Each set undertook for the performance by Turner of his official duties during a different period of time. And no cause of responsibility occurring within the period for which one set have undertaken can be transferred to the period for which another set have made themselves answerable.

It is urged, however, that equity has jurisdiction of such a cause, the accounts being so intricate and complicated that a court of law is incompetent, by reason of the inflexibility of its machinery, to examine them and properly marshal the liabilities. To use the language of KENT, C. J., in his separate opinion in the case of *Ludlow v. Simond, 2 Caines Cases, 52:* "The settlement of accounts, if they are in any degree long or complex, is improper, if not impracticable for a jury." This subject was considered in *State v. Churchill, 48 Ark., 426,* where the jurisdiction was sustained, partly on the ground of mutuality of accounts, the Treasurer keeping the State's account against himself and at the same time his own account against the State; but mainly on account of the difficulty;

amounting in that case to impossibility, of properly adjusting the accounts and apportioning the burdens of the defalcation elsewhere than in a Court of Chancery.

In one respect that case is distinguishable from this. The Treasurer is by law required to keep books of account, and it is eminently right and proper that a statement of his liability should be made from them. Not so, however, with the Sheriff and collector. No books are required to be kept in his office from which a statement of his accounts can be made. His accounts are kept by the Clerk of the County Court, who delivers to him the tax books and blank licenses for privileges, and charges him with the amount thereof. The collector settles with the Clerk; the County Court passes upon the account; and the collector makes his settlement with the Auditor for the State's revenue upon the basis of the account so adjusted. *Mansf. Dig.*, secs. *5751–2, 5760, 5812, 5832–40.*

As to the joinder as defendants of the sureties on several bonds given for successive terms, where it is alleged that the officer kept but one running account to which payments were applied indiscriminately, the observations of SOMERVILLE, J. in rendering the opinion of the Supreme Court of Alabama, in *Lott v. Mobile County, 79 Ala., 69,* seem to be pertinent: "The principal in the third bond is the same as the principal in the other two, being the one debtor who is primarily liable, and for the settlement of whose accounts with the complainant the bill is filed. He is thus, in a certain sense, a ligament or connecting link between all the bondsmen. The demands against the two sets of sureties, it is true, are, to some extent, distinct claims, but they are not entirely disconnected in view of the particular facts of the case. The collector is averred to have kept one running account extending all the way through his last two official terms, applying the funds collected miscellaneously without regard to any proper appropriation of payments. The sureties on each bond are

interested in the taking of the account, and in the proper ad-
justment of these payments, and of correction of alleged
sums in the account.

The question of multifariousness is often one of policy and
convenience, and therefore rests largely within the discretion of
the court.    It is sufficient to sustain a bill against such a charge
that each defendant has an interest in some one matter com-
mon to all the parties.    The objection is discouraged when
sustaining it might lead to inconvenience or defeat the ends of
justice.    Filing separate bills against each set of sureties in
this case, it seems to us, might lead to great inconvenience in
view of the peculiar interests each surety has in the taking of
the·account, and the correction of the alleged errors of credits
and payments."

No action at law can be maintained against the securities
in a collector's bond until his account has been adjusted by
the County Court.    There must be a judicial ascertainment of
the amount due from the principal in the bond before any
legal liability rests upon the securities.    When, however, a set-
tlement has been had, either by the voluntary act of the col-
lector, or by the County Court proceeding, upon his failure to
settle, to adjust his accounts, such adjudication is conclusive
evidence, in an action upon the bond, of the true state of the
accounts. *Jones v. State, 14 Ark., 170; Goree v. State, 22 id.,
236.*

1. EQUITY:
—Relief against
fraud in settle-
ment of collec-
tor.

Now, according to the allegations of the bill, Turner was
not in default, either in settling with the County Court or in
paying over the amounts that were found due.    But the burden
of the complaint is that the County Court was imposed upon,
and the State, county and school districts, for which he had
collected funds, were overreached and defrauded in the making
of these settlements, whereby a less amount was received than
was actually due.    And since more than two years had elapsed
after the date of such settlements before the errors were dis-

covered, it is now too late for the County Court to interfere and correct those errors. *Gantt's Dig.*, *sec. 5280; Mansf. Dig.*, *sec. 5851; White County v. Key, 30 Ark., 603.*

The question then arises whether the collector and his sureties can be sued in equity. Such suits are common in the analogous case of executors and administrators; but they are expressly authorized by section 128 of Mansfield's Digest. However, as was pointed out in *Hanf v. Whittington, 42 Ark., 491,* the principle is independent of statute. The settlement, when once approved, becomes a record. But even a solemn record may be impeached for fraud. And in *Crawford v. Carson, 35 Ark., 580,* it was intimated that if the collector's settlements are fraudulent, proceedings may be instituted through the Prosecuting Attorney of the circuit to have the record corrected by bill in chancery.

Our conclusion is, that when frauds, errors and improper credits are discovered in a collector's settlement after the lapse of two years, when the County Court has lost control of the matter, relief may be had in chancery upon an allegation of fraud, because no other court is competent to grant relief, the settlement being conclusive at law; and the securities on his bond may be made parties and a decree rendered against them, on a recovery against him, for the reasons that are stated in *Clark v. Shelton, 16 Ark., 480.* But no sufficient cause is mentioned in this bill for uniting the sureties on the six bonds. And even confining the allegations to the obligors on one of the bonds, the bill lacks precision. The point of attack in such a case is not so much any breach of the condition of the bond, or failure of official duty, as it is fraud in settling his accounts with the County Court, in failing to charge himself with moneys wherewith he was properly chargeable or in obtaining false credits, to which he was not entitled. The bill does not exhibit the settlements, nor refer to them except in a general way. It does not point out specifically the errors and fraudu-

*2. SAME: Same: Parties defendant.*

*3. SAME: Same: Sufficiency of complaint.*

lent credits that are complained of; nor does it charge distinctly that Turner had collected and withheld any certain sums of money. So far as it calls upon Turner to furnish information about these matters, without making issuable averments, or propounding special interrogatories, it is a fishing bill.

Section 4921 of Mansfield's Digest has abolished bills of discovery.

Decree affirmed.